Filed 3/16/22  P. v. Foster CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H048344 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1806974) |
| v. | |
| SALLY KAY FOSTER, | |
| Defendant and Appellant. | |

Appellant Sally Kay Foster appeals from a judgment entered after a jury found her guilty of six counts of animal cruelty.  She raises one claim of error, seeking vacatur pursuant to Assembly Bill No. 1869 (2019-2020 Reg. Sess.) (Assembly Bill 1869) of her probation supervision fee.  The Attorney General concedes the issue and also asserts that Foster is entitled to a reduction in the length of her probation due to the enactment of Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill 1950).

For the reasons explained below, we remand this matter with directions to the trial court to modify Foster's probationary term in accordance with current law.  In addition, we order vacated any unpaid probation supervision fees.  Otherwise, we affirm the judgment.

# I. FACTS AND PROCEDURAL BACKGROUND[1]

A 2018 search warrant of Foster's home revealed over 50 cats in extremely poor health. There was little food or water for the animals, and many were emaciated. Conditions inside the house were unsanitary, with cat excrement and urine throughout. The police found 12 dead cats in Foster's freezer.

Foster was charged by information with six counts of cruelty to animals (Pen. Code, § 597, subd. (b)[2]; counts 1-6). After hearing the evidence, the jury convicted her of all counts.

The trial court sentenced Foster on November 15, 2019. The court suspended imposition of sentence and placed Foster on probation for six years and four months.[3] The court imposed a number of conditions of probation, including that Foster serve four days in the county jail with four days credit for time served and complete 400 hours of "volunteer work" at an organization that does not involve animals. The court ordered restitution in the amount of $239,315 to San Jose Animal Care and Services pursuant to section 597, subdivision (g)(1).[4] Under section 597, subdivision (h),[5] the court ordered

---

[1] Because the facts of Foster's offenses are largely irrelevant to the issues on appeal, we present them in summary form.

[2] Unspecified statutory references are to the Penal Code.

[3] The prosecution requested a probation term of this length under section 1203.1, which at the time allowed for a term of probation as long as the maximum jail sentence. (Former § 1203.1, subd. (a).)

[4] This provision states that, upon conviction of a section 597 offense, "all animals lawfully seized and impounded with respect to the violation by a peace officer, officer of a humane society, or officer of an animal shelter or animal regulation department of a public agency shall be adjudged by the court to be forfeited and shall thereupon be awarded to the impounding officer for proper disposition. A person convicted of a violation of this section by causing or permitting an act of cruelty, as defined in [s]ection 599b, shall be liable to the impounding officer for all costs of impoundment from the time of seizure to the time of proper disposition." (§ 597, subd. (g)(1).)

[5] This subsection provides, "Notwithstanding any other provision of law, if a defendant is granted probation for a conviction under this section, the court shall order the defendant to pay for, and successfully complete, counseling, as determined by the court, designed to evaluate and treat behavior or conduct disorders. . . . The counseling

2

that Foster "successfully complete counseling as determined by the Court and/or [the] Adult Probation Department that is specifically designed to evaluate and treat behavioral or conduct disorders." The court also imposed on Foster a search condition and required that she not own, possess, maintain, have custody of, reside with, or care for any animal for a period of 10 years.[6]

With respect to fines and fees, the court imposed a $300 restitution fund fine (§ 1202.4) and imposed and stayed a probation revocation restitution fine in the same amount (§ 1202.44). The court also ordered a monthly probation supervision fee of $20 (§ 1203.1b). The court did not impose any other fines or fees.

## II. DISCUSSION

A. *Probation Supervision Fee*

Foster seeks vacatur of her probation supervision fee pursuant to Assembly Bill 1869. The Attorney General agrees with Foster that such an order is appropriate, as do we.

On September 18, 2020, the Governor signed Assembly Bill 1869, which "abrogated the authority to impose and collect 23 different administrative fees, including, as relevant here, [] the probation supervision fee." (*People v. Greeley* (2021) 70

_____

specified in this subdivision shall be in addition to any other terms and conditions of probation, including any term of imprisonment and any fine. This provision specifies a mandatory additional term of probation and is not to be used as an alternative to imprisonment pursuant to subdivision (h) of [s]ection 1170 or county jail when that sentence is otherwise appropriate. If the court does not order custody as a condition of probation for a conviction under this section, the court shall specify on the court record the reason or reasons for not ordering custody." (§ 597, subd. (h).)

[6] The court imposed this condition pursuant to section 597.9, subdivision (b), which states, "a person who has been convicted of a felony violation of subdivision (a) or (b) of [s]ection 597, or [s]ection 597b or 597.5, and who, within 10 years after the conviction, owns, possesses, maintains, has custody of, resides with, or cares for any animal is guilty of a public offense, punishable by a fine of one thousand dollars ($1,000)." (§ 597.9, subd. (b).)

Cal.App.5th 609, 625 (*Greeley*).) "Relevant to the probation supervision fee, section 1465.9, subdivision (a) provides, 'On and after July 1, 2021, the balance of any court-imposed costs pursuant to [s]ection 987.4, subdivision (a) of [s]ection 987.5, [s]ections 987.8, 1203, 1203.1e, 1203.016, 1203.018, 1203.1b, 1208.2, 1210.15, 3010.8, 4024.2, and 6266, as those sections read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated.' (Stats. 2020, ch. 92, § 62.)" (*Ibid.*)

In *Greeley*, this court held that "the plain language of Government Code section 6111 and Penal Code section 1465.9 not only authorizes, but mandates, vacation of a portion of a judgment for the purpose of striking the now-unauthorized assessments— here, the unpaid balance of the probation supervision [fee]." (*Greeley*, *supra*, 70 Cal.App.5th at p. 626.)

We therefore order the trial court to vacate any fees imposed on Foster under section 1203.1b that remained unpaid as of July 1, 2021.

B.  *Term of Probation*

Although Foster does not challenge the length of her probation, the Attorney General maintains that pursuant to Assembly Bill 1950, this court should remand the matter to the trial court to modify her term of probation. For the reasons explained below, we agree.

At the time of Foster's sentencing hearing in November 2019, the trial court had the authority to impose a probationary term (with exceptions not applicable here) "for a period of time not exceeding the maximum possible term of the sentence." (Former § 1203.1, subd. (a).) On January 1, 2021, Assembly Bill 1950 took effect and reduced the maximum probationary term for most felony offenses to two years.[7] (Stats. 2020, ch.

---

[7] The Legislature subsequently amended and then replaced section 1203.1. (Stats. 2021, ch. 257, §§ 21, 22 [Assembly Bill No. 177 (2021-2022 Reg. Sess.)].) Those enactments did not change the text of the provisions relevant here.

328, § 2; former § 1203.1, subds. (a), (m); *People v. Quinn* (2021) 59 Cal.App.5th 874, 879.) Section 1203.1, subdivision (a), now states in relevant part: "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time not exceeding two years, and upon those terms and conditions as it shall determine." (§ 1203.1, subd. (a).) Section 1203.1, subdivision (*l*)(1) also provides "The two-year probation limit in subdivision (a) shall not apply to: [¶] (1) [a]n offense listed in subdivision (c) of [s]ection 667.5 and an offense that includes specific probation lengths within its provisions." (§ 1203.1, subd. (*l*)(1).)

The Attorney General states that the statutory change effected by Assembly Bill 1950 applies retroactively to Foster's probationary term. For the reasons explained in *People v. Czirban* (2021) 67 Cal.App.5th 1073, 1095 (*Czirban*), we accept the concession.

With respect to the appropriate remedy, the Attorney General requests that this court remand the matter to the trial court to enable it to "reduce or terminate probation and make any necessary findings" about Foster's compliance with probation.

We agree that, under the circumstances of this case, remand to the trial court is warranted. (See *Czirban*, *supra*, 67 Cal.App.5th at p. 1095.) In its probation order, the trial court ordered that Foster pay a significant amount of restitution, and the record before this court contains no information about Foster's compliance with that condition. Moreover, section 597, subdivision (h) mandates that Foster successfully complete counseling as a condition of probation. We further observe that, under section 1203.1, subdivision (*l*)(1), the two-year maximum probationary period does not apply to "[a]n offense listed in subdivision (c) of [s]ection 667.5 and an offense that includes specific probation lengths within its provisions." (§ 1203.1, subd. (*l*)(1).) We express no opinion whether this exception applies to the crimes of which Foster stands convicted.

5

These and other relevant issues related to Foster's probation should be addressed by the parties and the trial court in the first instance. Thus, we will reverse the order of probation and remand the matter to the trial court to modify Foster's term of probation in accordance with current law.

## III.  DISPOSITION

The order of probation is reversed, and the matter is remanded to the trial court with directions to modify Foster's term of probation in accord with Penal Code section 1203.1, and to vacate any fees imposed under Penal Code section 1203.1b that remain unpaid as of July 1, 2021.

_____
                       Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Wilson, J.

**H048344**
*People v. Foster*